IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

DOUGLAS WAYNE DUNN,                                      CV. 03-1165-KI

            Petitioner,                         OPINION AND ORDER

      v.

BRIAN BELLEQUE,

            Respondent.

THOMAS J. HESTER
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, OR 97204

      Attorney for Petitioner

JOHN R. KROGER
Attorney General
ANDREW HALLMAN
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096

      Attorneys for Respondent

KING, Judge

      Petitioner Douglas Wayne Dunn, an inmate in the custody of the

Oregon  Department  of  Corrections,  brings  this  habeas  corpus

proceeding pursuant to 28 U.S.C. § 2254.  For the reasons set forth below, the petition is denied, and this proceeding is dismissed.

<u>**BACKGROUND**</u>

On December 16, 1998, petitioner was indicted on 44 counts in Multnomah County Circuit Case No. 98-12-20018.  (Ex. 102.) The charges all stemmed from numerous armed robberies of motels and small businesses in November and December 1998.  Additionally, petitioner was a suspect in 18 armed robberies in King County and Snohomish County, Washington.  The evidence against petitioner included surveillance videos picturing plaintiff and accomplices, as well as stolen property and a gun matching that used in one of the robberies recovered from petitioner's car.  (Ex. 117, 120.)

Petitioner was appointed counsel, Gary Bertoni.  Petitioner professed his innocence, and asserted that he had an alibi for the robberies underlying counts 9, 21, and 42.  According to petitioner, on the occasions of those robberies, he switched places with his identical twin brother, Brian Dunn.  At that time, Brian Dunn was incarcerated at the Airway Heights Correction Center near Spokane, Washington.  Petitioner asserts that on three occasions, he drove to Spokane, parked his car near the prison, scaled the perimeter fence, and met his brother at the smoking pad near the back of the building.  Petitioner claims that on those occasions, he then entered the Airway Heights prison and took his brother's place for a day or two.

Petitioner maintains that on those three occasions, while petitioner was in prison, Brian Dunn drove to Portland in petitioner's vehicle, met petitioner's friends (accomplices Edward Guerrero and Gary Wilson), and committed the robberies underlying counts 9, 21, and 42. According to petitioner, his brother would return to the prison a day or two following the robberies, where petitioner and his brother would again switch places.

Trial counsel hired an investigator, Philip Agrue, to substantiate petitioner's alibi defense. Mr. Agrue interviewed petitioner and asked petitioner to make drawings of the Airway Heights Correction Center to verify petitioner's version of events. Trial counsel then sent Mr. Agrue to the prison for further investigation, where Mr. Agrue met with prison officials, inspected the fence petitioner claims to have jumped, took photographs, and compared the interior to the drawings provided by petitioner.

Mr. Agrue also met with petitioner's mother and girlfriend and other relevant and available witnesses. Although petitioner's drawings resembled the interior of the prison, the results of the investigation did not completely support petitioner's alibi. Trial counsel determined that petitioner's best option was to enter into plea negotiations.

Petitioner was facing approximately 60 years in prison on the 44 charges in the indictment. And, because petitioner previously had been convicted of two felonies in Washington, petitioner faced

the possibility of life in prison if convicted of any of the 18 charges in King County and Snohomish County under Washington's "three strikes" law. (Ex. 140.)

Petitioner insisted upon going to trial until a settlement conference on June 3, 1999, with Multnomah County Circuit Judge Julie Frantz. At the settlement conference, trial counsel showed petitioner photographic and videotaped evidence of the Washington robberies. (Ex. 107.) At the settlement conference, the prosecutor agreed to dismiss the bulk of the charges against petitioner in exchange for petitioner's guilty plea on Counts 9, 21, 42, and 44 and a stipulated 20 year sentence. The prosecutor also agreed to provide assurances from Washington authorities that petitioner would not be prosecuted on the additional 18 robberies under investigation in Washington. (Ex. 104.) Petitioner accepted the plea bargain.

The following day, on June 4, 1999, petitioner pleaded guilty to four separate charges: (1) Count 9, Robbery in the First Degree with a Firearm; (2) Count 21, Robbery in the First Degree with a Firearm; (3) Count 42, Attempted Robbery in the First Degree with a Firearm; and (4) Count 44, Felon in Possession of a Firearm.

Sentencing was delayed until June 16, 1999, to obtain written confirmation from the Washington authorities that petitioner would not be prosecuted on the charges under investigation. Having received that confirmation, petitioner was sentenced to a total of 240 months.

Petitioner voluntarily dismissed his direct appeal, and filed a petition seeking post-conviction relief (PCR). (Ex. 155.) In his PCR petition, petitioner asserted that trial counsel was ineffective for failing to adequately investigate, failing to prepare a defense, and failing to ensure that his guilty plea was knowingly and voluntarily given. The PCR court denied relief. (Ex. 143.) Petitioner appealed to the Oregon Court of Appeals, which affirmed without opinion. The Oregon Supreme Court denied review. Dunn v. Lampert, 185 Or. App. 163, 58 P.3d 853 (2002), rev. denied, 335 Or. 180 (2003).

In February 2002, petitioner filed a motion in the trial court to correct his sentence based on receiving three gun minimums instead of one. In March 2002, petitioner filed a motion to withdraw his plea based on the misinformation he received from trial counsel about his sentence. (Ex. 152.) In response to the motions, the trial court amended petitioner's sentence to delete two gun minimums which had been improperly added and denied his motion to withdraw his plea. (Exs. 150, 153, 156.) Because petitioner was serving a Measure 11 sentence with a gun minimum, deleting the two additional gun minimums had no impact on the length of petitioner's 240 month sentence. (Id.) Thus, the trial court ruled that petitioner received the bargain to which he agreed and was not entitled to withdraw his plea. (Ex. 156, Motion Hearing Tr. at 37-47.)

Petitioner then filed a second petition for post-conviction relief, asserting that he was denied Due Process and received ineffective assistance of counsel during his motion to withdraw his plea. (Ex. 152.)  The trial court denied relief.  The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review.  <u>Dunn v. Belleque</u>, 204 Or. App. 522, 131 P.3d 198, <u>rev. denied</u>, 340 Or. 483 (2006).

Petitioner filed a third petition for post-conviction relief, raising claims under <u>Blakely v. Washington</u>, 542 U.S. 296 (2004). The trial court denied relief. (Ex. 172).  The Oregon Court of Appeals summarily affirmed, and petitioner did not seek review in the Oregon Supreme Court.  (Exs. 175-176).

<u>**DISCUSSION**</u>

In his first ground for relief, petitioner contends he received ineffective assistance of counsel.  In grounds two through six, petitioner raises assorted Due Process violations.  Respondent moves to deny habeas corpus relief on the basis that the state court's rejection of petitioner's first ground for relief is entitled to deference, and that grounds two through six are procedurally defaulted.  Respondent is correct.

**I.    <u>State Court's Decision on Ground One is Entitled to Deference</u>.**

In ground one, petitioner contends that trial counsel rendered ineffective assistance in the following regards:  (a) failing to conduct an inadequate investigation, (b) failing to adequately

prepare for trial, (c) failing to ensure that his plea was knowing and voluntary, (d) failing to withdraw, and (e) failing to adequately communicate with petitioner during his representation.

**A.    Standards.**

Under 28 U.S.C. § 2254(d), federal habeas corpus relief may not be granted on a claim that was adjudicated on the merits in state court, unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under Strickland v. Washington, to prevail on a claim of ineffective assistance of counsel, petitioner must show that (1) his counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. 466 U.S. 668, 687 (1984); Bell v. Cone, 535 U.S. 685, 698-99 (2002); Williams v. Taylor, 529 U.S. 362, 390 (2000). Failure to make the required showing on either prong defeats the ineffectiveness claim.

To prove deficiency of performance, petitioner must demonstrate that counsel's performance fell below an objective standard of reasonableness. Strickland, 466 U.S. at 688. To establish prejudice, petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different.  Bell, 535 U.S. at 695; Williams, 529 U.S. at 390-91; Strickland,  466 U.S. at 687, 694.

When a habeas petitioner challenges a guilty plea based on ineffective assistance of counsel, to establish deficient performance under the Strickland test, petitioner must show that counsel's advice was not "within the range of competence demanded of attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 58-59 (1985)(citing McMann v. Richardson, 397 U.S. 759, 771 (1970)).  To demonstrate prejudice under Strickland, petitioner must show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. Hill, 474 U.S. at 59.

Petitioner presents no new evidence in this proceeding and asserts no defect in the state post-conviction process. Accordingly, this court presumes that the state court's findings of fact are correct, unless rebutted by the petitioner with clear and convincing evidence.  28 U.S.C. §§ 2254(d)(2),(e)(1); Lambert v. Blodgett, 393 F.3d 943, 978 (9th Cir. 2004), cert. denied, 546 U.S. 963 (2005); Taylor v. Maddox, 366 F.3d 992, 999 (9th Cir.), cert. denied, 543 U.S. 1038 (2004); see also DeWeaver v. Runnels, 556 F.3d 995, 1007 (9th Cir.), cert. denied, 130 S. Ct. 183 (2009).  This court reviews the state court's ultimate conclusion to ascertain

whether it is contrary to or an unreasonable application of Strickland. 28 U.S.C. § 2254(d)(1); Lambert, 393 F.3d at 978.

**B.   Failure to Investigate and Prepare for Trial.**

In grounds one (a) and (b), petitioner complains that trial counsel failed to adequately investigate his alibi defense and otherwise prepare a defense.   During the state PCR proceeding, petitioner complained that Mr. Bertoni did little to investigate his alibi defense, was not prepared to proceed to trial, and failed to review police reports or contact witnesses.

Petitioner's alibi defense was that he switched places with his identical twin brother, Brian Dunn, who was then incarcerated. At the post conviction proceeding, petitioner described how he and his brother switched places, and that after-the-fact, he learned that his brother met petitioner's friends and committed three robberies. (Ex. 142,   PCR Trial Tr. p. 70-75, 83-86.)   Petitioner suggested that only his mother could tell the brothers apart in the surveillance videos.   (Id. at p. 87.)

In support of his claim at the PCR proceeding, petitioner submitted an affidavit from his brother.   Mr. Dunn averred that he is the identical twin brother of petitioner, and that he and petitioner have sometimes been confused. (Ex. 131.) Mr. Dunn also attested that while in prison, he had a conversation with petitioner, and that he indicated a desire to switch places with petitioner.   (Id.)

9 - OPINION AND ORDER

Petitioner also submitted an affidavit from Edward Guerrero, petitioner's accomplice on the robbery in Count 21. (Ex. 127.) Mr. Guerrero averred that he was currently in prison, and that he robbed the Extended Stay America Hotel with Brian Dunn, not petitioner. According to Mr. Guerrero, it was petitioner who informed him that the brothers were switching places. (Id.).

Petitioner also submitted an affidavit from Gary Wilson, petitioner's accomplice in the robbery of the Holiday Inn Express in Count 9. Mr. Wilson averred that he had ingested a large amount of methamphetamine prior to the robbery, and that during the police investigation, he was tricked into positively identifying petitioner as his accomplice. (Ex. 135.) Mr. Wilson attested that since his incarceration, he has learned that petitioner has a twin brother and that he cannot tell the brothers apart. Mr. Wilson averred that he *now* believes it was Brian Dunn who was his accomplice when he robbed the Holiday Inn Express.[1] (Id.)

In contrast, trial counsel Gary Bertoni attested that he hired an investigator, Mr. Agrue, to contact all relevant witnesses, and that some of the witnesses identified by petitioner were not relevant. (Ex. 140.) Trial counsel averred that Mr. Agrue contacted petitioner's girlfriend and mother several times. Trial

---

[1]Petitioner also submitted affidavits from Louise Dunn (petitioner's mother), Michael Haskins, Lynn Haskins, and Timothy Dulaney, none of which contained any personal knowledge concerning petitioner's alibi defense. (Exs. 130, 132-34.)

counsel attested that he sent Mr. Agrue to the Airway Heights
correctional Center to investigate petitioner's alibi defense.
Trial counsel stated that "[p]etitioner was fully apprised of our
findings, which did not completely support [petitioner's] claim,"
and that petitioner still insisted upon proceeding with the alibi
defense. (Id. at 2.)

In its decision, the PCR court made the following relevant
findings:

> 7.   Petitioner raised an alibi defense to his trial
>      counsel regarding counts 9, 21, and 44.  This
>      defense was that petitioner's identical twin
>      brother, Brian Michael Dunn, who was incarcerated at
>      Airway Heights Correctional Center in Spokane,
>      Washington would escape the correctional center by
>      switching places with petitioner.  Petitioner would
>      assume Brian Dunn's position in the prison for a day
>      or two at a time.  This alibi defense covered three
>      separate incidents each of which coincided with an
>      armed robbery or attempted armed robbery for which
>      petitioner was charged and eventually pled.
>
> 8.   Trial counsel Gary Bertoni investigated this alibi
>      defense and sent his investigator to the
>      correctional facility in Spokane.  His investigation
>      did not completely support petitioner's claim of
>      alibi yet petitioner insisted on proceeding with the
>      alibi defense.
>
> 9.   Brian Michael Dunn did not admit in his affidavit to
>      having committed the three robberies for which
>      petitioner plead and was sentenced.
>
> 10.  No other credible person could testify that Brian
>      Michael Dunn had committed these three robberies.
>
> ....
>
> 14.  Trial counsel had contacted all relevant and
>      available witnesses for petitioner's alibi defense.
>      (Ex. 143.)

Petitioner has failed to rebut, with clear and convincing evidence, the state court's factual findings. Accordingly, these findings are presumed to be correct. 28 U.S.C. § 2254(e)(1); Lambert, 393 F.3d at 977-78.

In the instant proceeding, petitioner focuses on trial counsel's billing records and correspondence between petitioner and counsel as evidence that counsel did not adequately investigate and prepare. However, in light of the PCR court's factual findings that Mr. Bertoni sent an investigator to the prison to substantiate petitioner's improbable alibi defense, and contacted all available and relevant witnesses, I conclude that petitioner has not met his burden of demonstrating that trial counsel's advice to plead guilty was not within the range of competence demanded of attorneys in criminal cases. Hill, 474 U.S. at 58. Accordingly, petitioner has failed to demonstrate that trial counsel rendered deficient performance. Strickland, 466 U.S. at 688.

Furthermore, petitioner is unable to demonstrate that he was prejudiced by trial counsel's alleged failure to investigate his alibi defense. "Where the alleged error is counsel's failure to investigate a potential defense, the salient inquiry is whether 'discovery of the evidence would have led counsel to change his recommendation as to the plea.'" Lambert, 393 F.3d at 983 (quoting Hill, 474 U.S. at 59). And, the result of the inquiry may depend on

whether the defense would have succeeded at trial.    Id.; Smith v.
Mahoney, 611 F.3d 978, 989 (9th Cir. 2010).

In this regard, the PCR court made the following conclusion:

> Petitioner's alibi defense that it was his incarcerated
> identical twin brother, not himself, that committed three
> robberies is unbelievable and no witness was presented to
> the court that could or would verify any fact associated
> with the alibi.    The only witness to the fact is
> Petitioner and this court finds his testimony unworthy of
> belief. (Ex. 143 p. 4.)

As the PCR court concluded, petitioner has presented no
credible evidence to show that his alibi defense had any chance of
success had he gone to trial.    Petitioner's brother did not admit to
committing the robberies underlying Counts 9, 21, or 44, or even
admit to switching places on the dates in question.    Aside from
petitioner's own self-serving testimony, petitioner presents only
incredulous accounts from accomplices Wilson and Guerrero, who
suggest that they learned of petitioner trading places with Brian
Dunn after-the-fact.    As the PCR court reasonably concluded,
petitioner's alibi defense is unbelievable and certainly would not
have succeeded, and petitioner is unable to establish prejudice.
Lambert, 393 F.3d at 983.

The record wholly supports the PCR court's conclusions that
petitioner was facing 60 years' imprisonment in Oregon, and a
potential life sentence in Washington.    Because of trial counsel's
investigation and plea negotiation, trial counsel was able to secure
a 20 year sentence for petitioner.    In all probability, Mr.

Bertoni's ability to secure concessions from prosecutors in Washington state enabled petitioner to avoid a potential life sentence there.  Therefore, in the absence of any credible evidence that his alibi defense would have succeeded, petitioner cannot demonstrate that but for trial counsel's alleged inadequate investigation and preparation, he would not have pleaded guilty and would have proceeded to trial.  Strickland, 466 U.S. at 688; Hill, 474 U.S. at 59; Lambert, 393 F.3d at 983.

In sum, I conclude that the PCR court's rejection of petitioner's ineffective assistance of counsel claim is neither contrary to, nor an unreasonable application of clearly established federal law.  28 U.S.C. § 2254(d).

**C.  Failure to Withdraw and Ensure Petitioner's Plea Was Knowing and Voluntary.**

In ground one(c), petitioner argues that trial counsel rendered ineffective assistance when counsel failed to ensure that petitioner's plea was knowingly and voluntarily given.  According to petitioner, on the day of the settlement conference, trial counsel informed petitioner that if he did not accept the plea bargain, counsel would not represent him at trial.  Consequently, petitioner argues, he was forced to accept the plea or proceed to trial unprepared.

In ground one(d), petitioner complains that trial counsel rendered ineffective assistance when he failed to withdraw because

trial counsel was unwilling to take the case to trial.  In support, petitioner points to the notation made by Judge Frantz following the settlement conference which states: "case taken off for plea (may be ethical problem if case goes to trial)."  (Ex. 126 p. 6.) Petitioner suggests that if counsel was concerned that petitioner would perjure himself at trial, counsel should have withdrawn, and that counsel's unwillingness to represent him at trial coerced petitioner into pleading guilty.

Petitioner argued these claims before the PCR court.  When the PCR court inquired about petitioner's plea colloquy and whether petitioner informed Judge Frantz about Mr. Bertoni's alleged poor representation, petitioner admitted that he did not complain to the court about counsel during the plea hearing.  Petitioner argued instead that he raised concerns during the settlement conference the previous day. (Ex. 142, PCR Trial Tr. p. 73-77.)  At the PCR hearing, petitioner insisted that he was coerced to enter a guilty plea because trial counsel intended to withdraw, his trial date was set, and that he had no other option.  (Id. at 79.)

In contrast, trial counsel averred that he had numerous discussions with petitioner about pleading guilty, and that petitioner "freely and voluntarily chose to plead guilty." (Ex. 140.)  Trial counsel further attested that on the day of the plea, petitioner had:

> an opportunity to view a surveillance video from one of
> the robberies in Washington.  It is my belief that

15 - OPINION AND ORDER

petitioner, after viewing the video and being advised that Washington prosecutors (three counties were involved) agreed not to indict him on any of the 12 robberies[.]... I knew that ... [petitioner] was very concerned that, if indicted and convicted of a robbery in the State of Washington, he would be sentence[d] to a life term under the 'three strikes' law in Washington.

....

We discussed all of the charges he was facing and thoroughly discussed the prosecution's evidence against him and the merits of his defense.  I fully advised petitioner of his rights and the likely consequences of going to trial versus pleading guilty or no contest. (Id.)

In its detailed determination, the state PCR court made the following relevant findings and conclusions:

6.   Petitioner did not complain to the court of the representation given to him by his trial counsel Gary B. Bertoni.  No written complaint was ever sent to the court.  No verbal complaint was made on the day the plea was given.  No verbal complaint was made on the day of sentencing.

....

3.   Petitioner knowingly and voluntarily entered into a plea agreement with the State that guaranteed him a twenty year sentence, the dismissal of other counts in Multnomah County, and that precluded the State of Washington from bringing unsolved robbery charges against him for which he was a suspect.

4.   Petitioner was not forced by either his trial counsel or the circumstances of [the settlement conference] to enter the plea unwillingly because there was no other available option for him. Petitioner had a new trial date of 18 June 1999. He had hearings on 4 June 1999 and 16 June 1999 to complain to the court about his trial counsel. His criminal justice experience and knowledge were extensive.  Petitioner's claim that he had no[] other choice than to accept the plea bargain is not persuasive or trustworthy.  It is this court's opinion that petitioner did not like the idea of a

twenty year sentence but realized it was better than the alternatives.

5.    There was a conflict between trial counsel and petitioner. Petitioner wanted counsel to push an alibi defense that counsel ethically could not pursue. The judge's note on Exhibit 15(A) is viewed by the court as having reference to the fact that trial counsel was concerned that his client might perjure himself at trial. This court does not accept the position of petitioner that this note has reference to the fact that trial counsel has been ineffective and not attentive to his duties to his client. (Ex. 143, p. 3-4.)

Petitioner has not presented clear and convincing evidence to rebut the following factual findings: (1) petitioner made no verbal or written complaint about counsel's performance; (2) petitioner received a 20 year sentence in exchange for the dismissal of numerous other charges; (3) petitioner had two opportunities, June 4 and 16, 1999, to complain to the judge who was accepting his plea about counsel's performance and did not do so; and (4) the PCR court did not find petitioner's allegations credible. Accordingly, these findings are entitled to a presumption of correctness. 28 U.S.C. § 2254(e)(1).

In light of these factual findings, petitioner has failed to demonstrate that the PCR court's conclusion that petitioner's plea was knowing and voluntary is objectively unreasonable. Before entering a plea of guilty, a defendant must be aware of the nature and elements of the charges against him and the potential punishment. Brady v. United States, 397 U.S. 742, 749 (1970). And, the contemporaneous record of the guilty plea hearing caries a

"strong presumption of verity." <u>Blackledge v. Allison</u>, 431 U.S. 63, 73-74 (1977).

In the plea colloquy with Judge Frantz, petitioner admitted that he had reviewed the two page plea petition with his attorney and understood its terms. (Ex. 105 p. 4.) Petitioner also admitted that he was giving up his right to a jury trial, and to present and cross-examine witnesses. (<u>Id.</u>) In the colloquy, petitioner stated that he understood the sentence against him, and that in exchange for pleading guilty, other charges-including those under investigation in Washington-would be dropped. (<u>Id.</u>) Accordingly, the PCR court's rejection of petitioner's ineffective assistance of counsel for failing to ensure petitioner's plea was knowingly and voluntarily given is entitled to deference under 28 U.S.C. § 2254(d).

Petitioner's suggestion that trial counsel had a duty to withdraw, and rendered deficient performance because he failed to do so misses the mark. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." <u>Strickland</u>, 466 U.S. at 688-89. At the PCR proceeding, petitioner argued at length his contention that Mr. Bertoni was unwilling to take his case to trial, and informed petitioner the day of the settlement conference that counsel would withdraw if petitioner did not plead guilty. The PCR court found petitioner's version of events "not persuasive or trustworthy," which petitioner has failed

to rebut.   Additionally, the PCR court's conclusion that trial counsel may have indicated a desire to withdraw because of a perjury concern, and not because counsel was inattentive, is supported by the record as a whole.   In short, petitioner has failed to demonstrate that trial counsel's performance in negotiating petitioner's plea was not within the range of competence demanded of attorneys in criminal cases.   <u>Hill</u>, 474 U.S. at 58; <u>Strickland</u>, 466 U.S. at 688.

Even assuming *arguendo* that trial counsel rendered deficient performance, petitioner's conclusory argument that he would have proceeded to trial falls short of establishing prejudice.   As detailed above, because petitioner has failed to provide any evidence that his alibi defense had a chance of succeeding, petitioner cannot demonstrate that but for trial counsel's alleged inadequate investigation, preparation or withdrawl, he would have proceeded to trial.   <u>Lambert</u>, 393 F.3d at 983; <u>Hill</u>, 474 U.S. at 59; <u>Strickland</u>, 466 U.S. at 688.

In sum, I conclude that petitioner has failed to demonstrate that the PCR court's rejection of his ineffective assistance claim in ground one(c) and (d) is (1) contrary to, or an unreasonable application of, clearly established federal law; or (2) premised upon an unreasonable determination of the facts in light of the evidence presented.   28 U.S.C. § 2254(d)(1) and (2).

**D.    Failure to Communicate.**

In ground one(e), petitioner complains that trial counsel rendered ineffective assistance by failing to adequately maintain communication with him in preparation for trial. Petitioner's claim is meritless.

A defendant has the right to effective representation, not a "meaningful relationship" with counsel. Morris v. Slappy, 461 U.S. 1, 14 (1983). Petitioner did express frustration with his counsel by sending counsel letters. However, petitioner presents no evidence to rebut the PCR court's factual findings that petitioner did not complain to the trial court of his representation, despite having multiple opportunities to do so. To be sure, the only evidence that trial counsel was not prepared or failed to investigate comes from petitioner, whom the PCR court concluded was not credible. Beyond petitioner's conclusory allegations, petitioner has failed to establish that trial counsel's performance fell below an objective standard of reasonableness, or that he would not have pleaded guilty and would have proceeded to trial. Strickland, 466 U.S. at 688; Hill, 474 U.S. at 59; Lambert, 393 F.3d at 983. Accordingly, the state court's rejection of petitioner's ineffective assistance of counsel claim is neither contrary to, nor an unreasonable application of Strickland. 28 U.S.C. § 2254(d).

In so holding, I reject petitioner's assertion that the PCR court applied an incorrect evidentiary or legal standard because the

PCR court failed to discuss or cite <u>Strickland</u>.  The post-conviction court's failure to cite <u>Strickland</u> does not support a conclusion that its decision is contrary to well established federal law.  <u>See Early v. Packer</u>, 537 U.S. 3, 8 (state court need not cite or even be aware of governing Supreme Court case law so long as neither the reasoning nor the result of its decision contradicts them).  Petitioner has failed to demonstrate that the state court's reasoning or result in this case contradicts controlling Supreme Court precedent. 28 U.S.C. § 2254(d).  Habeas relief is not warranted.

## II.  **Procedural Default.**

Petitioner does not discuss the merits of grounds two through six in the briefing to this court.  Respondent moves to deny petitioner's remaining grounds for relief on the basis that they are procedurally defaulted.  I agree.

## A.  **Standards.**

Generally, a state prisoner must exhaust all available state court remedies either on direct appeal or through collateral proceedings before a federal court may consider granting habeas corpus relief.  28 U.S.C. § 2254(b)(1).  A state prisoner satisfies the exhaustion requirement by fairly presenting his claim to the appropriate state courts at all appellate stages afforded under state law.  <u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004); <u>Casey v.</u>

Moore, 386 F.3d 896, 915-56 (9th Cir. 2004), cert. denied, 545 U.S. 1146 (2005).

A fair presentation requires a prisoner to state the facts that entitle him to relief, and to reference the federal source of the law on which he relies, or a case analyzing the federal constitutional guarantee on which he relies, or to simply label his claim "federal." Baldwin, 541 U.S. at 32; Gray v. Netherland, 518 U.S. 152, 162-63 (1996). A petitioner also must have presented his federal claims to the state courts in a procedural context in which the merits of the claim will be considered. Castille v. Peoples, 489 U.S. 346, 351-52 (1989). Where a petitioner has defaulted his federal claims in state court pursuant to "an independent and adequate state procedural rule," federal habeas review is barred. Coleman v. Thompson, 501 U.S. 722, 750 (1991); Cook v. Schriro, 538 F.3d 1000, 1025 (9th Cir. 2008); cert. denied, 129 S. Ct. 1033 (2009). Habeas review of procedurally defaulted claims is barred unless the petitioner demonstrates cause for the procedural default and actual prejudice, or that failure to consider the claims will result in a miscarriage of justice. Coleman, 501 U.S. at 750.

**B.    Grounds Two Through Six are Procedurally Defaulted.**

In ground two, petitioner contends that the trial court violated his Due Process rights when it misinformed him about the sentence he would receive. In ground five, petitioner argues that the trial court violated his Due Process rights when it coerced him

into entering a plea with that misinformation.  In ground six, petitioner alleges that the trial court violated his Due Process rights when it based his sentence on a miscalculated offender score. Petitioner did not raise grounds two, five or six on direct appeal or in his first petition for post-conviction relief.   Rather, petitioner raised these issues in his second PCR petition, which was dismissed on the state's motion by the second post-conviction court as successive. (Exs. 153, 155, 157-59.)  Because grounds two, five and six were precluded by violation of a state procedural rule, they are procedurally defaulted.  See Coleman, 510 U.S. at 732; Cook, 538 F.3d at 1025; O.R.S.

§ 138.550(3).

    In ground three, petitioner asserts that the prosecutor violated his Due Process rights when he threatened an unlawful sentence to coerce petitioner into accepting the plea agreement.  In ground four, petitioner contends that the trial court violated his Due Process rights when it failed to appoint him new counsel, or advise petitioner of his right to have new counsel appointed. Petitioner raises grounds three and four for the first time in the instant proceeding, and therefore they have not been properly exhausted.  Castille, 489 U.S. at 351-52.  Because the time for exhausting these claims has passed, grounds three and four are procedurally defaulted.  See O.R.S. § 138.650.

Petitioner makes no attempt to excuse his procedural default of grounds two through six, or assert that a fundamental miscarriage of justice will occur if they are not considered.  Therefore, habeas relief on grounds two through six is precluded.

## **CONCLUSION**

Based on the foregoing, petitioner's petition for writ of habeas corpus (#2) is DENIED, and this proceeding is DISMISSED, with prejudice.

Because petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability is DENIED.  See 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this _____21st_____ day of SEPTEMBER, 2010.


                                    /s/ Garr M. King
                                    Garr M. King
                                    United States District Judge